IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NOYE MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 01-551-SLR |
| | ) | |
| UNITED STATES OF AMERICA and | ) | |
| DELAWARE TRANSIT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

---

Lawrence A. Ramunno, Esquire of Ramunno, Ramunno & Scerba, P.A.,
Wilmington, Delaware.  Counsel for Plaintiff.

Colm F. Connolly, United States Attorney for the District of
Delaware.  Wilmington, Delaware.  Counsel for Defendant United
States.

Daniel Griffith, Esquire of Marshall, Dennehey, Warner, Coleman &
Goggin, Wilmington, Delaware.  Counsel for Defendant Delaware
Transit Corporation.

---

**OPINION**

Dated: March 28, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

On August 13, 2001, plaintiff Noye Miller filed this action against defendants United States and Delaware Transit Corporation ("DART"). (D.I. 1)  Plaintiff asserts a claim under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., alleging defendants are liable for injuries he sustained while riding defendant DART's bus.  After an April 29, 2004 bench trial on the liability issues, the court found that plaintiff proved, by a preponderance of the evidence, that the negligent acts of defendants United States and DART caused his injuries and that plaintiff's own negligent omission contributed to those injuries.[1]  (D.I. 48, 54)  A bench trial to determine damages was held on April 27, 2005.[2]  (D.I.  84)  In response to the court's concerns about the admissibility of plaintiff's expert testimony, the parties submitted post-trial briefing on the issue. (D.I. 74, 77, 78, 79, 81)

## II.  FINDINGS OF FACT

1.    The only witness to testify at the bench trial was plaintiff Miller.  (D.I. 84)  Prior to the DART accident on April

[1]Specifically, the court found that defendant United States is fifty percent (50%) liable, defendant DART is twenty-five percent (25%) liable, and plaintiff is twenty-five percent liable (25%).  (D.I. 54)

[2]Plaintiff alleges his neck injuries are related to the DART accident.  (D.I. 74)

21, 2000 ("the DART accident"), he claimed to be feeling well.[3] (Id. at 28-29)  He had, however, chronic problems with his back.[4] (Id. at 29)

2.    After the DART accident, plaintiff was taken by ambulance to Wilmington Hospital.  (Id. at 30)  He received treatment for left shoulder, neck and leg injuries.  He was prescribed medication and told to rest for a few days.

3.    Because of continuing pain in his neck and back, he sought treatment at the emergency room at St. Francis Hospital. (Id. at 31)  Subsequently, he visited his family doctor for treatment, medication and physical therapy.  (Id. at 31-32) Plaintiff also received chiropractic treatment.  However, his problems did not resolve.  (Id. at 32)  Further testing, including X-Rays, EMGs and an MRI, as well as injections to relieve neck pain, were conducted at Johns Hopkins Hospital. (Id. at 33)

4.    Finding little relief from these treatments, plaintiff consulted with Dr. Gopez, who recommended neck surgery.[5]  (Id. at

---

[3]The court finds plaintiff's description of his physical condition not credible in light of his extensive problems, complaints and treatment evinced in his social security and medical records.  (D.I. DX1A, DX1B, DX1C, DX2- DX4, DX11)

[4]The back problem was the result of a work related injury suffered plaintiff suffered in 1983.  (Id. at 34)

[5]Dr. Gopez previously performed lumbar spine surgery in August 1989.  (Id. at 65)  In 1990, plaintiff experienced lower back pain and radiation to his extremities.  (Id. at 66-67)

2

34)  Because plaintiff did not want to undergo another surgery,
he sought treatment, including medication and therapy, from
different doctors.  (Id. at 34-35)

     5.  Eventually, plaintiff was treated by Dr. Bruce Katz,
who recommended and performed surgery on plaintiff's neck on
April 8, 2003.  (Id. at 35)  Specifically, Dr. Katz performed an
"anterior cervical diskectomy and fusion at C4-5 level, with
cadaveric donor allograft and anterior plate."[6]  (KD at 21)  The
surgery was performed to resolve plaintiff's C-5 radicular pain.
(KD at 22)   The surgery was successful and plaintiff's pain
disappeared.  (Id. at 36)

     6.  Prior to the DART accident, plaintiff received social
security disability benefits for back problems related to his
work injury.  (Id. at 37-47, 58)  Neck pain and leg weakness were
also noted.  Plaintiff's social security records reflect that he
received treatment, including a nerve block and medication for
the neck pain.  (Id. at 49)  Degenerative changes in his neck
were seen.  (Id. at 52)  In 1987, he used a neck brace and cane
and spent most of his time in bed.  (Id. at 61-63)

     7.  In April 1990, plaintiff was involved in a vehicular
accident and was transported to the hospital with neck injuries.
(Id. at 68, 70)  Percocet, as well as other pain medications,

_____

[6]The deposition testimony of Dr. Bruce Katz ("KD") and Dr.
John B. Townsend ("TD") were made part of the bench trial record.

were prescribed to relieve his neck and back pain.  (Id. at 71, 74; DX2, DX3, DX4)  For the next several years, plaintiff continued to experience pain and received various forms of treatment.  (DX1A, DX1B, DXC)

8.    Plaintiff offered the deposition testimony of his treating physician, Dr. Katz, to establish that his injuries were the result of the DART accident.  (KD at 48; KD ex. 1) According to Dr. Katz, plaintiff told him that his injuries were caused by the DART accident.[7]  (KD at 15)  Dr. Katz did not conduct a review of any of plaintiff's prior medical records. (Id. at 13, 16, 38)  Instead, Dr. Katz testified that "as a physician I have to believe what the patient tells me."  (Id. at 16)  As a result, Dr. Katz opined that "the objective source of [plaintiff's] pain" was "from his C-5 radiculpathy."  (Id. at 41-42)  The surgery was successful and resolved plaintiff's neck problems.  (Id. at 45-46)

9.    Defendants' expert Dr. John B. Townsend, III examined plaintiff and reviewed his extensive medical records.  (TD at 7) Dr. Townsend opined that plaintiff had various conditions, including neck and low back pain that existed prior to the DART accident.  (Id. at 8, 27, 30)  Dr. Townsend found there was a temporal relationship between plaintiff's subjective complaints

---

[7]Specifically, Dr. Katz averred: "I can only say – I can only state that the symptoms that the patient was complaining about after the accident were due to the accident."  (KD at 15)

4

after the accident and, "absent some other mechanism, I would have to say that those complaints were related to the accident." (Id. at 25, 34)  However, Dr. Townsend concluded that not all of plaintiff's subjective complaints were always accurate.  (Id. at 34)  Dr. Townsend was also critical of the excessive pain medication and treatment provided.  (Id. at 36)

## III. CONCLUSIONS OF LAW

1.  Defendants argue that the only medical expert on causation, Dr. Katz, based his opinion entirely on what plaintiff told him because he did not review any of the voluminous medical records detailing plaintiff's medical treatment prior to the DART accident.  (D.I. 77, 79)  "Where a medical expert's opinion depends primarily upon the credibility of the claimant's subjective complaints . . . and the [fact finder] determines that those subjective complaints are not credible, the [fact finder] may reject the medical expert's conclusion."  Clements v. Diamond State Port Corp., 831 A.2d 870 (Del. 2003).

2.  Plaintiff asserts that, as the treating physician, Dr. Katz did not believe it was necessary to review all the prior medical records because he obtained information from his examination of plaintiff and the review of plaintiff's subsequent medical records and test results.  (D.I. 74, 81)  Plaintiff contends that Dr. Katz's opinions are buttressed by Dr. Townsend's conclusion that the DART accident was the source of

5

plaintiff's neck injuries because there was "no other mechanism" involved.  Further, plaintiff argues that defendants waived any objections to Dr. Katz when they failed to file pre-trial objections to his opinion.  Plaintiff requests a reopening of the record to allow Dr. Katz to review all prior medical records and submit a report on the same for the court's consideration.

3.    Under Fed. R. Evid. 702, there is a preliminary burden of establishing that medical causation testimony is based upon reliable information or methodology and is not a "net opinion." See generally, Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); In re: Paoli Railroad Yard PCB Litigation, 35 F.3d 717 (3d Cir. 1994).  To qualify, the expert must testify that the foundation of his opinion comes from a source "reasonably relied upon" by experts in his field.  Absent this demonstration, the testimony lacks a reliable foundation on the "why's" and "wherefore's" necessary to qualify for consideration.

4.    Here, plaintiff failed to provide any medical evidence establishing that a physician may base a causation opinion entirely on a patient's history, regardless of its accuracy, and resolution of symptoms after surgery - the sole bases of Dr. Katz's opinion.  Because Dr. Katz never testified that patient histories and the post-surgical resolution of symptoms are customarily relied upon by physicians in arriving at causation opinions, the expert's conclusion amounts to a "net opinion"

6

under Fed. R. Evid. 703. Specifically, Dr. Katz failed to
explain whether and why plaintiff's explanation of his medical
history and resolution through surgery constituted reliable
foundations for the doctor's conclusion that the DART accident
caused any pain to any body part. Instead, the closest Dr. Katz
came to discussing the importance of patient history was when he
stated that "I ask the patient for their history. This is what
he gives me." (KD at 9) This testimony followed an earlier
question about any "objective evidence that there was a(sic)
causation between the incident and the objective source of the
reported pain," to which Dr. Katz stated, "[a]s a physician I
have to believe what the patient tells me." (KD at 15-16)
Nowhere did Dr. Katz explain, for example, that patient histories
are customarily and reasonably relied upon by orthopaedists in
arriving at a diagnosis or opinion on causation. Moreover, Dr.
Katz's medical report fails to provide information about the
reliability of patient history in arriving at medical
conclusions. Without more, Dr. Katz's opinion that plaintiff's
neck, back or other pain was accident-related **because plaintiff
said so** is not a medical opinion at all; instead any lay person
could arguably come to the same conclusion.

        5.   Likewise, Dr. Katz's later attempt to expand his
causation opinion to include plaintiff's resolution of symptoms
after neck surgery fails to satisfy the Fed. R. Evid. 702

                                   7

requirement. Specifically, when asked why he believed plaintiff's neck symptoms were accident-related, Dr. Katz stated "[t]he patient's history, patient's resolution of symptoms." (KD at 37) When afforded the opportunity to explain the reliability of equating symptom resolution following surgery with trauma, Dr. Katz averred that "[t]he patient complained of pain after the injury, had work-up done. Following the surgery his symptoms resolved." (Id.) Despite the opportunity to explain the precise reason for this conclusion - a necessary prerequisite to Fed. R. Evid. 702 - Dr. Katz failed to do so. Absent additional evidence, there is nothing of record from which to conclude that Dr. Katz's causation opinion was arrived at by reliable evidence.

6. To the extent that plaintiff urges the court to consider the testimony of defense expert Dr. Townsend, the result is the same. Dr. Townsend, like Dr. Katz, did not testify to the reliability of patient history or resolution of symptoms after surgery in establishing causation.

7. Although this case was presented as a bench trial, the court cannot be transformed from fact-finder into medical expert, presumed to have medical knowledge of how and why orthopaedists arrive at causation opinions. Nor is it permissible to reopen the record to answer any lingering questions merely because the court, rather than a jury, sat as the deliberative body. The parties' agreement to utilize physician discovery depositions in

8

lieu of live or de bene esse deposition testimony was a matter of choice, unrestricted by the court. With a closed record, plaintiff has failed to carry the preliminary burden required to have his case resolved by the fact-finder.

8. Plaintiff's failure to satisfy the Fed. R. Evid. 702 requirement makes it unnecessary to address and weigh the plaintiff's credibility and the weight of the medical evidence. The court would, however, be constrained to reject plaintiff's claims in their entirety given his demeanor during his testimony. Plaintiff had repeated memory failures with respect to his medical problems, course of treatments, and medications, as well as his social security disability records. When presented with documented evidence which contradicted previous testimony, he was unable to provide credible responses or explanations.

## IV. CONCLUSION

Having concluded that plaintiff failed to prove that his injuries were caused by the DART accident, an award of damages is inappropriate. An order consistent with this opinion shall issue.